UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 1:22-CV-24089-MARTINEZ/BECERRA

TASMA BRIGHTHAUPT, CONSUELA JONES, ODIN MARTINEZ, and VERONICA MEJIA,

    Plaintiffs,

v.

NOMI HEALTH, INC.,

    Defendant.

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AND TO DISMISS ACTION WITH PREJUDICE

**I.    INTRODUCTION**

Plaintiffs Tasma Brighthaupt, Consuela Jones, Odin Martinez, and Veronica Mejia (collectively, "Plaintiffs"), Defendant Nomi Health, Inc. ("Nomi"), and dismissed-Defendant SBP Staffing & Recruiting, LLC ("SBP") (collectively, Nomi and SBP are referred to as "Defendants") have entered into a settlement resolving Plaintiffs' claims in full. (See Settlement Agreement attached as Exhibit 1). The Settlement Agreement was reached near the completion of the discovery period, which included extensive written discovery and nine depositions. The Settlement Agreement is also the result of several separate attempts at resolution, including an settlement conference with Magistrate Judge Becerra near the beginning of discovery and a successful mediation near the close of discovery. As a result, the settlement is fair and reasonable, and it warrants this Court's approval.

Pursuant to the Settlement Agreement, Plaintiffs will receive a total of sixty thousand dollars ($60,000.00) (the "Gross Settlement Sum")—forty thousand ($40,000.00) from Nomi and twenty thousand ($20,000.00) from SBP. Of that amount, twenty-five thousand nine hundred and

1

seventeen dollars and forty-six cents ($25,917.46) (the "Wage Settlement") will be paid to Plaintiffs in settlement and release of their claims under the Fair Labor Standards Act. That amount has been calculated by and divided among the four Plaintiffs in proportion to their respective pay rates and time worked, as determined by the actual records produced by SBP, with equal amounts of unliquidated and liquidated damages, as reflected in the attached Settlement Agreement. An additional thirty thousand eighty-two dollars and fifty-four cents ($30,082.54) (the "Fee and Cost Settlement") of the Gross Settlement Sum was separately negotiated, and agreed to, as the amount to be paid to Plaintiffs' counsel as attorneys' fees and costs. Finally, the remaining four thousand dollars ($4,000.00) (the "Additional Consideration") of the Gross Settlement Sum was negotiated as independent consideration for general releases of claims, a limited confidentiality clause, a nondisparagement clause, a no-rehire clause, and any remaining non-monetary terms of the Settlement Agreement.

The Settlement Agreement, as reflected in the agreements attached hereto, should be approved by the Court as a fair and reasonable resolution of a *bona fide* dispute, and Plaintiffs' claims should be dismissed with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Tasma Brighthaupt, Consuela Jones, and Veronica Mejia are Registered Nurses ("RNs"), and Odin Martinez is an Emergency Medical Technician ("EMT"). Each of the Plaintiffs, during the time at issue in this lawsuit, provided RN or EMT services through SBP and were classified by SBP as independent contractors. Plaintiffs each allege that they were each misclassified as independent contractors by SBP, and that Nomi was their joint employer. Thus, Plaintiffs allege that Defendants violated the FLSA by not paying an overtime premium for all hours worked in excess of 40 in individual workweeks. Defendants deny these allegations.

On December 16, 2022, Plaintiffs, along with other individuals who have since dismissed their claims, initiated the instant lawsuit as a putative FLSA collective action. (Dkt. 1.) On May 18, 2023, Plaintiffs and SBP filed a notice of settlement, informing the Court that they had agreed in principle to a settlement. (Dkt. 35.) Plaintiffs then filed an Amended Complaint on June 15, 2023, that dropped SBP as a named defendant and removed the collective action allegations. Plaintiffs and Nomi then appeared at an in-person settlement conference with Magistrate Judge Becerra on July 18, 2023, which was unsuccessful.

Following the settlement conference, each of the Plaintiffs was deposed, and Plaintiffs took five depositions of their own. On October 31, 2023, just before the close of discovery, the Parties attended a half-day mediation with Robyn Hankins. As a result of the mediation, which was informed by the discovery that preceded it, Plaintiffs and Nomi agreed to fully and finally resolve the claims between them. On December 14, 2023, the Court entered an order requiring Plaintiffs and SBP to file documents necessary to conclude their settlement and claims. (Dkt. 63.) Those matters have also been incorporated into the Settlement, with the resolution of the claims against Nomi.

Plaintiffs' Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In entering into this Settlement Agreement, Plaintiffs have considered: (a) the facts developed during the investigation and mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this matter according to the terms of this Settlement Agreement. Plaintiffs have concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiffs to settle their claims against Defendants and the Releasees.

The Parties' investigations, substantial discovery, and extensive arms-length negotiations, first with the Magistrate Judge and then with a mediator, resulted in this Settlement Agreement. Defendants deny the allegations in this lawsuit and further deny any liability for any alleged wage and hour violations or failure to pay overtime compensation. Nomi denies it is a joint employer of Plaintiffs. Defendants also deny that SBP misclassified any Plaintiff as an independent contractor. Defendants further contend that, even were liability found, there is no entitlement to liquidated damages because of its good-faith defense.

The amount in damages payable to each Plaintiff is based on the number of hours worked and the Plaintiff's hourly rate of pay. These hours and pay rates are taken directly from the actual records for each Plaintiff as provided by SBP. The table below summarizes the hours, and owed overtime, that each Plaintiff alleged prior to mediation. Defendant disagree with each calculation and deny liability altogether, but after negotiation, the parties reached the compromise of Plaintiffs' FLSA claims reflected in the Settlement Agreement:

| Plaintiff's Name | Alleged Overtime Hours | Alleged Overtime Owed (Unliquidated) | Payment for Alleged Unliquidated FLSA Damages | Payment for Alleged Liquidated FLSA Damages |
|---|---|---|---|---|
| Brighthaupt | 98.3 | $2,368.00 | $896.50 | $896.50 |
| Jones | 50 | $1,125.00 | $467.50 | $467.50 |
| Martinez | 961.33 | $17,012.53 | $8,006.26 | $8,006.26 |
| Mejia | 360.78 | $8,176.93 | $3,588.46 | $3,588.46 |
| **TOTAL** | | **$28,682.46** | **$12,958.72** | **$12,958.72** |

Based on the defenses raised by Defendants, including that the Plaintiffs were independent contractors and that Nomi was not an employer of Plaintiffs, the Settled Number above is a compromise that factors in the possibility that the those Defendants could preclude Plaintiffs from any recovery at all. The propriety of that compromise was further informed by facts revealed during discovery, and the high likelihood that Nomi would have filed a motion for summary judgment on joint employment and independent contractor issues if a settlement were not reached.

The Parties now present the Settlement Agreement to the Court for its approval. The Settlement Agreement offers significant advantages over the continued prosecution of this case: Plaintiffs will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendants would assert various defenses to their liability. The Parties have spent considerable time analyzing the available data, documents, and testimony, and negotiating and drafting the Settlement Agreement. The Parties now jointly move for approval of their settlement, as set forth herein.

### III. DISCUSSION

#### A. The Settlement Agreement Reflects a Fair and Reasonable Compromise of Plaintiffs' FLSA Claims.

Settlements of FLSA claims must be approved by a court to ensure fairness and to give effect to the FLSA releases. *Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982). Courts generally consider "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Carrillo v. King Creek Hair Design Unisex Corp.*, No. 22-cv-21019-DAMIAN, 2022 WL 1591061, at *2 (S.D. Fla. May 19, 2022).

Settlement approval is warranted where, as here, the settlement resolves a *bona fide* dispute between the parties "with respect to coverage [and] amount due under the Act," is fair and reasonable, and is the product of serious, informed, arm's-length negotiations. *Lynn's Food Stores*, 679 F.2d at 1353–54 & n.8; *see also Bennett*, 737 F.2d at 987 n.9. The Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

5

- whether each Plaintiff qualified as an independent contractor (to whom the FLSA would not be applicable) or an employee (to whom the FLSA would be applicable);
- whether Nomi qualified as a joint employer of any Plaintiff, if that individual were determined to be an employee;
- whether Plaintiffs' hours worked, as reported by Plaintiff, included time for hours not actually worked;
- whether Plaintiffs had received overpayments in various workweeks or were paid other amounts, for which Defendants would have been entitled to an offset or credit;
- whether Defendants would be able to establish their good-faith defense to liquidated damages, including due to its reliance on the independent contractor regulation in place during the period at issue, even if this Court ultimately did not defer to that regulation; and
- whether Plaintiffs and/or Defendants would appeal any legal or factual determinations, including as to liability and damages.

Accordingly, a *bona fide* dispute over FLSA provisions exists. Ultimately, the Wage Settlement Amount agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the workers in this case for the time period at issue. The Settlement reached represents an excellent result for the Settlement Collective Members. Indeed, the $25,917.46 Wage Settlement Amount represents over 90% of the overtime wages Plaintiffs originally claimed they were owed. Notably, it is Defendants' position that Plaintiffs' "best case" damages are, in fact, significantly lower than those claimed by Plaintiffs, and thus the Wage Settlement Amount reflects an amount greater than the "true" unliquidated figure, even were misclassification and employment established.

There is no indicia of fraud or collusion with respect to this proposed settlement, which was reached after arm's-length negotiations, including a settlement conference conducted by a Magistrate Judge, full discovery, including document productions and 9 depositions, and a mediation. Ultimately, represented by experienced counsel, and with assistance of an experienced mediator, the Parties have agreed to this Settlement as a fair and reasonable resolution of this case.

Because of each of the substantive issues noted above, continued litigation would result in significant risks for Plaintiffs. Indeed, prior to the mediation, Nomi informed Plaintiffs that it

would be moving for summary judgment on each of their claims, in light of their deposition testimony. A trial on the merits would present similar risks, including the possibility of no recovery at all. Moreover, the significant expense in attorneys fees and trial preparation, which would likely far exceed the amounts to be paid, will be avoided as a result of the Settlement Agreement. The likely risks, complexity, delay, and expense of proceeding with litigation are clearly outweighed by the substantial and immediate financial relief presented by this settlement. *See Cotter v. Checkers Drive-In Rests*., Inc., No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414, at *7 (M.D. Fla. Aug. 25, 2021) ("The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain."); *Lunsford v. Woodforest Nat'l Bank,* No. 1:12-cv-103-CAP, 2014 WL 12740375, at *7 (N.D. Ga. May 19, 2014) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993))). Moreover, the Parties' respective counsel agree that the settlement is a reasonable resolution of this multi-Plaintiff matter, in light of the foregoing considerations.

Notably, there is a "strong presumption in favor of finding a [FLSA] settlement fair," when, as here, it is the product of serious, informed, arms-length negotiations. *Carrillo*, 2022 WL 1591061, at *2. Absent fraud and collusion, the Court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough County Hosp. Auth.,* No. 8:90-cv-120-T-25B, 2000 WL 1682918, at *4

(M.D. Fla. Aug. 7, 2000). Thus, for the reasons outlined above, the Settlement should be approved as fair and reasonable.

> **B.     Plaintiffs Submit that the Attorneys' Fees to Be Paid Under the Settlement Agreement Are Reasonable.**

Under the Settlement Agreement, Defendants are to pay Plaintiffs' Counsel a separately-negotiated, and agreed to, amount of $30,082.54 for attorneys' fees and costs, to be split amongst the two firms representing Plaintiffs. Plaintiffs' counsel maintains that the fees and costs contemplated by the Settlement Agreement are reasonable and should be approved. Prosecuting this case to a successful settlement for the benefit of Plaintiffs required Plaintiffs' Counsel to develop the legal theories of the case, conduct substantial legal and factual research on the alleged violations, investigate each Plaintiff's claim, review time and pay records, prepare for and attend mediation, and finalize the Settlement Agreement.

The Court must consider the following factors in determining whether requested attorney's fees are reasonable:

> (1)   the time and labor required;
> (2)   the novelty and difficulty of the questions;
> (3)   the skill requisite to perform the legal service properly;
> (4)   the preclusion of other employment by the attorney due to the acceptance of the case;
> (5)   the customary fee;
> (6)   whether the fee is fixed or contingent;
> (7)   time limitations imposed by the client or the circumstances;
> (8)   the amount involved and the results obtained;
> (9)   the experience, reputation and ability of the attorneys;
> (10)  the "undesirability" of the case;
> (11)  the nature and length of the professional relationship with the client; and
> (12)  awards in similar cases.

*Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340 n.7 (11th Cir. 1999). Each factor here weighs in favor of approving the negotiated and agreed to fees in this case.

Plaintiffs submit that the time and labor required in handling this case was extensive. The handling attorneys for Plaintiffs in this case Mr. OBeidy, Ms. Scott, and Mr. Roberts have maintained contemporaneous time records that exceed the amount of time they have agreed to accept as part of this compromised settlement. Enclosed with this motion are affidavits of Ms. Scott and Mr. OBeidy reflecting the hours worked by their firms on this matter. The affidavits detail the number of hours each counsel worked on the case, the description of the work done for those hours, and the hourly rates used to calculate reasonableness of the fees. Each affidavit also includes citations to recent orders wherein judges of this district approved the fees of lead counsel and their staff.

Plaintiffs submit that the actual time spent in this case far exceeds the agreed-to fee amount. Not including the time related to this motion and receiving final approval, the Scott Law Team calculates that it has billed approximately $23,061.75 in fees for this case and spent $7,946.72 in costs. Obeidy & Associates, P.A. calculates that it has billed $20,882.51 and spent $1,032.51 in costs. That total amount of $52,923.49 is significantly more than the $30,082.54 in fees and costs separately-negotiated, and agreed to, as part of this Settlement Agreement.

Plaintiffs further contend that the novelty and difficulty of the questions presented in this case weigh in favor of approval of the fees. Plaintiffs' Counsel submit that they were required to research and complete an analysis for each Plaintiff as to their classification as an independent contractor and as to issues of joint employment. Given that multiple Plaintiffs were involved, this also involved tracking and weighing differing facts in the analyses specific to each individual. Likewise, this supports the skill required in litigating this matter.

Plaintiffs' counsel also submit that the time spent on this case reflects time that counsel were precluded from working on other employment, and the fees here were the standard fee each counsel charges for all cases, including hourly work for non-contingent cases.

Moreover, Plaintiffs state that the fact that counsel agreed to represent Plaintiffs on a contingent basis supports approval of the requested fee. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F. 2d 367, 371 (2d Cir. 1990). Courts have found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of a requested fee award: "In undertaking to prosecute [a] complex case entirely on a contingent fee basis, Class Counsel assume[s] a significant risk of nonpayment or underpayment. . . . That risk warrants an appropriate fee. 'A contingency fee arrangement often justifies an increase in the award of attorney's fees.'" *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548, *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *accord In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of nonpayment).

The amount involved in this matter, and the result obtained, also supports approval of the fee. Each Plaintiff is receiving a meaningful portion of the amounts originally claimed, with the final sum informed by information learned during discovery.

Finally, Plaintiffs contend that the extensive experience and certifications of the Plaintiffs' counsel support the fee. Ms. Scott is board certified in labor and employment law and has been practicing since 1998, Mr. OBeidy has similarly been practicing labor and employment law for

over 20 years. Each attorney has specific experience in litigation of wage and hour claims on a collective basis. Each attorney has also had their fees approved by courts, in this district and others, at a rate similar to their rates in this case. A representative collection of cases are cited to in the affidavits by Ms. Scott and Mr. OBeidy.

Based on their declarations, the Scott Law Team has 79.87 hours and $23,061.75 in attorney fees and OBeidy & Associates has 51.5 hours and $20,882.51 in attorney fees.

|  | Timekeeper | Rate | Total Hours |
|---|---|---|---|
| Scott Law Team | Cathleen Scott, Esq. | $475 | 6.90 |
|  | Gabriel Roberts, Esq. | $325 | 51.97 |
|  | Ashley Prescott | $150 | 19.80 |
|  | Porsche Brailsford | $70 | 1.10 |
|  | Stephanie Houska | $95 | 0.10 |
| OBeidy & Associates | Andrew Obeidy, Esq. | $400 | 44.00 |
|  | Priscilla Pacheco, Esq. | $300 | 7.50 |

For these reasons, Plaintiffs' Counsel requests that the Court approve the Fees and Costs Settlement Amount set forth in the Settlement Agreement.

      **C.**     **Plaintiffs Received Independent Consideration for the Non-FLSA Terms, Which Do Not Undermine the Fairness of the Settlement Agreement.**

Additionally, the Parties separately negotiated for Plaintiffs to receive consideration separate and apart from the consideration they would receive as part of the settlement agreement in exchange for general releases, a limited confidentiality clause that permits the public filing of the agreement, a nondisparagement clause, a no-rehire clause, and any other non-FLSA terms in the Settlement Agreement. Because this consideration will be paid to the Plaintiffs in addition to the amounts to be paid for the release of the FLSA claims, these provisions do not undermine the fairness of the agreement. *See, e.g.*, *Villa v. Turcios Grp. Corp.*, No. 21-cv-23709-COOKE/DAMIAN, 2022 WL 2713741, at *6 (S.D. Fla. July 12, 2022) (holding that general releases—as well as confidentiality, non-incitement, and no-rehire clauses—do not undermine an

agreement's fairness and should be approved when supported by separate consideration); *Clarke v. Alta Resources Corp.*, No. 2:17-cv-276-FtM-99CM, 2017 WL 4958771, at *3 (M.D. Fla. Oct. 30, 2017) (holding that an FLSA settlement was not undermined by a separate general release when there was "an additional $500.00 as consideration for Plaintiff's general release of claims").

## IV.   CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant this Motion and dismiss this case with prejudice.

Respectfully submitted this 12th day of January, 2024.

| | |
|---|---|
| By: */s/ Gabriel T. Roberts*<br>Gabriel "Gabe" T. Roberts, Esq.<br>Florida Bar No. 1018435<br>GRoberts@scottlawteam.com<br>Cathleen Scott, Esq.<br>Florida Bar Number 135331<br>CScott@scottlawteam.com<br>SCOTT LAW TEAM, LLC<br>Jupiter Gardens<br>250 South Central Boulevard<br>Suite 104-A<br>Jupiter, FL 33458<br>Telephone: (561) 653-0008<br>Facsimile: (561) 653-0020<br><br>Andrew Obeidy, Esq.<br>Florida Bar No. 910341<br>andrew@obdlegal.com<br>Obeidy & Associates, P.A.<br>2755 E. Oakland Park Boulevard<br>Suite 225<br>Fort Lauderdale, FL 33306<br>Telephone: (305)892-5454<br>Facsimile: (954)206-6955<br><br>*Attorneys for Plaintiffs* | By: */s/ Andrew M. McKinley*<br>Andrew McKinley<br>Florida Bar No. 122069<br>amckinley@seyfarth.com<br>SEYFARTH SHAW LLP<br>1075 Peachtree Street, N.E.<br>Suite 2500<br>Atlanta, GA 30309-3958<br>Telephone: (404) 885-1500<br>Facsimile: (404) 892-7056<br><br>*Counsel for Defendant Nomi Health, Inc.*<br><br>By: */s/ Fabian A. Ruiz*<br>Marlene Quintana, B.C.S.<br>Florida Bar No. 88358<br>Marlene.quintana@gray-robinson.com<br>Fabian A. Ruiz<br>Florida Bar No. 117928<br>Fabian.ruiz@gray-robinson.com<br>GRAYROBINSON, P.A.<br>333 SE 2nd Avenue, Suite 3200<br>Miami, FL 33131<br>Telephone: (305) 416-6880<br><br>*Counsel for Defendant SBP Staffing and Recruiting, LLC* |