# EXHIBIT 1

# SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**1.  Parties.** The parties to this Agreement are Tasma Brighthaupt ("Brighthaupt"), Consuela Jones ("Jones"), Odin Martinez ("Martinez"), and Veronica Mejia ("Mejia"), Nomi Health, Inc. ("Nomi"), and SBP Staffing and Recruiting, LLC ("SBP"). Collectively, Brighthaupt, Jones, Martinez, and Mejia are referred to as "Plaintiffs." Collectively, Nomi and SBP are referred to as "Defendants." Collectively, Plaintiffs and Defendants are referred to as the "Parties."

On December 16, 2022, Plaintiffs filed a lawsuit in the U.S. District Court for the Southern District of Florida, titled *Tasma Brighthaupt et al. v. Nomi Health Inc. and SBP Staffing & Recruiting, LLC*, Case No. 1:22-cv-24089-JEM (the "Lawsuit"), which alleged that Defendants had failed to pay them overtime under the Fair Labor Standards Act of 1938 ("FLSA").

Plaintiffs and Defendants are interested in avoiding all further potential legal costs and disputes, and in fully and expeditiously resolving the claims, charges, or issues of law or fact that were or could have been raised by Plaintiffs against Defendants in the Lawsuit, as of the date Plaintiffs sign this Agreement.

**2.  Consideration for Release of Claims.** SBP agrees to pay Plaintiffs a total of twenty thousand dollars ($20,000.00) and Nomi agrees to pay Plaintiffs a total of forty thousand dollars ($40,000.00), allocated as follows:

- *To Tasma Brighthaupt*:

    - $896.50 from SBP, as non-employee compensation, in exchange for Brighthaupt's release of any claims for allegedly unpaid wages, including her claims under the FLSA (not including liquidated damages). SBP's receipt of an IRS Form W-9 completed and executed by Brighthaupt is a condition precedent to this payment. SBP will issue, if appropriate, an IRS Form 1099 to Brighthuapt reflecting this payment.

    - $754.68 from SBP and $141.82 from Nomi, as non-employee compensation, in exchange for Bighthaupt's release of any claims for liquidated wages in connection with any claims for allegedly unpaid wages, including under the FLSA. Defendants' receipt of IRS Forms W-9 completed and executed by Brighthaupt is a condition precedent to these payments. Defendants will issue, if appropriate, IRS Forms 1099 to Brighthaupt reflecting this payment.

    - $500.00 from Nomi, as non-employee compensation, in exchange for Brighthaupt's release of any and all claims that Brighthaupt may have against the Releasees (as defined below) arising out of any fact, condition, or circumstance whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise. Nomi's receipt of IRS Form W-9 completed and executed by Brighthaupt is a condition precedent to this

1

payment. Nomi will issue, if appropriate, an IRS Form 1099 to Brighthaupt reflecting this payment.

- $500.00 from Nomi, as non-employee compensation, in exchange for Brighthaupt's agreement to the confidentiality, nondisparagement, convent not to sue, no-rehire, and other provisions contained in this Agreement for which consideration has not been previously identified. Brighthaupt's receipt of an IRS Form W-9 completed and executed by Brighthaupt is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Brighthaupt reflecting this payment.

- *To Consuela Jones*:

    - $467.50 from SBP, as non-employee compensation, in exchange for Jones's release of any claims for allegedly unpaid wages, including her claims under the FLSA (not including liquidated damages). SBP's receipt of an IRS Form W-9 completed and executed by Jones is a condition precedent to this payment. SBP will issue, if appropriate, an IRS Form 1099 to Jones reflecting this payment.

    - $316.96 from SBP and $150.54 from Nomi, as non-employee compensation, in exchange for Jones's release of any claims for liquidated wages in connection with any claims for allegedly unpaid wages, including under the FLSA. Defendants' receipt of IRS Forms W-9 completed and executed by Jones is a condition precedent to these payments. Defendants will issue, if appropriate, IRS Forms 1099 to Jones reflecting these payments.

    - $500.00 from Nomi, as non-employee compensation, in exchange for Jones's release of any and all claims that Jones may have against the Releasees (as defined below) arising out of any fact, condition, or circumstance whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise. Nomi's receipt of IRS Form W-9 completed and executed by Jones is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Jones reflecting this payment.

    - $500.00 from Nomi, as non-employee compensation, in exchange for Jones's agreement to the confidentiality, nondisparagement, convent not to sue, no-rehire, and other provisions contained in this Agreement for which consideration has not been previously identified. Nomi's receipt of an IRS Form W-9 completed and executed by Jones is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Jones reflecting this payment.

2

- *To Odin Martinez:*

  - $8,006.26 from SBP, as non-employee compensation, in exchange for Martinez's release of any claims for allegedly unpaid wages, including his claims under the FLSA (not including liquidated damages). SBP's receipt of an IRS Form W-9 completed and executed by Martinez is a condition precedent to this payment. SBP will issue, if appropriate, an IRS Form 1099 to Martinez reflecting this payment.

  - $3,856.41 from SBP and $4,149.86 from Nomi, as non-employee compensation, in exchange for Martinez's release of any claims for liquidated wages in connection with any claims for allegedly unpaid wages, including under the FLSA. Defendants' receipt of IRS Forms W-9 completed and executed by Martinez is a condition precedent to these payments. Defendants will issue, if appropriate, IRS Forms 1099 to Martinez reflecting these payments.

  - $500.00 from Nomi, as non-employee compensation, in exchange for Martinez's release of any and all claims that Martinez may have against the Releasees (as defined below) arising out of any fact, condition, or circumstance whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise. Nomi's receipt of IRS Form W-9 completed and executed by Martinez is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Martinez reflecting this payment.

  - $500.00 from Nomi, as non-employee compensation, in exchange for Martinez's agreement to the confidentiality, nondisparagement, convent not to sue, no-rehire, and other provisions contained in this Agreement for which consideration has not been previously identified. Nomi's receipt of an IRS Form W-9 completed and executed by Martinez is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Martinez reflecting this payment.

- *To Veronica Mejia:*

  - $3,588.46 from SBP, as non-employee compensation, in exchange for Mejia's release of any claims for allegedly unpaid wages, including her claims under the FLSA (not including liquidated damages). SBP's receipt of an IRS Form W-9 completed and executed by Mejia is a condition precedent to this payment. SBP will issue, if appropriate, an IRS Form 1099 to Mejia reflecting this payment.

  - $2,113.23 from SBP and $1,475.24 from Nomi, as non-employee compensation, in exchange for Mejia's release of any claims for liquidated wages in connection with any claims for allegedly unpaid wages, including

3

    under the FLSA. Defendants' receipt of IRS Forms W-9 completed and executed by Mejia is a condition precedent to these payments. Defendants will issue, if appropriate, IRS Forms 1099 to Mejia reflecting these payments.

- $500.00 from Nomi, as non-employee compensation, in exchange for Mejia's release of any and all claims that Mejia may have against the Releasees (as defined below) arising out of any fact, condition, or circumstance whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise. Nomi's receipt of IRS Form W-9 completed and executed by Mejia is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Mejia reflecting this payment.

- $500.00 from Nomi, as non-employee compensation, in exchange for Mejia's agreement to the confidentiality, nondisparagement, convent not to sue, no-rehire, and other provisions contained in this Agreement for which consideration has not been previously identified. Nomi's receipt of an IRS Form W-9 completed and executed by Mejia is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Mejia reflecting this payment.

- *To Plaintiffs' Counsel:*

    - $11,584.17 from Nomi for attorneys' fees and costs to Obeidy & Associates, P.A. Defendants' receipt of an IRS Form W-9 completed and executed by Obeidy & Associates, P.A. is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Obeidy & Associates, P.A. reflecting this payment.

    - $18,498.37 from Nomi for attorneys' fees and costs to Scott Law Team, LLC. Nomi's receipt of an IRS Form W-9 completed and executed by Scott Law Team, LLC is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Scott Law Team, LLC reflecting this payment.

Defendants will report the payment(s) above to the IRS as required by law. Plaintiffs acknowledge that they have not relied on any statements or representations by Defendants or their attorneys with respect to the tax treatment of the payments described in this section. If any taxing body determines that the tax treatment was incorrect and that greater amounts should have been withheld from any payment above (or any part thereof), Plaintiffs acknowledge and assume all responsibility for paying those amounts and further agree to indemnify and hold Defendants harmless for payment of any additional taxes and any interest and penalties thereon.

All Parties warrant that they are not aware of any attorneys' liens placed on this matter.

Plaintiffs agree that the payments above are consideration for the promises by Plaintiffs contained herein and that Defendants were not otherwise obligated to make these payments. The Parties further acknowledge that it is Defendants' position that Plaintiffs were not, at any time relevant to the claims asserted in the Lawsuit, employees of any of the Defendants.

Further, the Parties acknowledge and agree that the payments by SBP and Nomi detailed above are independent of one another. That is, Nomi shall not be responsible for any amount to be paid by SBP, and SBP shall not be responsible for any amount to be paid to Nomi. To the extent any party defaults in its payment obligations, Plaintiffs' sole recourse shall be against the defaulting party. Similarly, Plaintiffs' obligations under the Agreement attach as to each Defendant separately, and are not dependant on the other parties' satisfaction of its obligations. That is, the failure of one of the Defendants to make its payments under the Agreement shall not impact the ability of a Defendant that has made its payments to enforce Plaintiff's promises and obligations under the Agreement.

Defendants' obligations to make the payments above shall become due within 21 days after all of the following occur: (i) Defendants receive this Agreement executed by all Plaintiffs; (ii) the Court approves this Agreement, upon joint motion, and dismisses the Lawsuit with prejudice, in full; and (iii) Plaintiffs and their attorney(s) provide any completed tax forms identified above. Plaintiffs acknowledge that, unless and until all of the foregoing conditions precedent are satisfied as to all Plaintiffs, this Agreement shall not be valid or binding.

**3.    Dismissal of the Lawsuit.** The Parties agree that Plaintiffs causing the Lawsuit and claims to be dismissed with prejudice is a condition precedent to Defendants' promises in this Agreement. Plaintiffs agree to take any actions necessary to effectuate the dismissal with prejudice. Plaintiffs understand and acknowledge that if any portion of the claims asserted by any current individual plaintiff in the Lawsuit is not dismissed with prejudice or proceeds in any respect, this Agreement shall have no force or effect and Plaintiffs shall be entitled to no payments hereunder.

**4.    Release of Claims.** Plaintiffs release Defendants, their parents, subsidiaries, affiliates, predecessors, successors, partnerships, investors, joint ventures, vendors, subcontractors, related entities, and all of Defendants' and the foregoing entities' past and present directors, officers, employees, and anyone else acting by, through, for, under, or in concert with any of them (collectively, the "Releasees") from any and all claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description, or character whatsoever that party may have against any or all of the Releasees arising out of his work or employment with any Releasee and/or any other fact, condition, circumstance, or occurrence whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected, or concealed, and whether presently asserted or otherwise, including, but not limited to, all claims that any Releasee failed to pay any wages or other compensation or benefits including back pay, front pay, bonuses, commissions, equity, expenses, incentives, insurance, paid/unpaid leave/time off, profit sharing, salary, or separation pay/benefits.

The Parties acknowledge that they may later discover facts different from or in addition to those now known to them or believed by them to be true with respect to any or all of the matters covered by this Agreement, and the Parties agree that this Agreement nevertheless shall remain in full and complete force and effect.

5. **Release Exclusions.** The Release of Claims excludes the right to enforce this Agreement as well as any claims that cannot be waived by law. This includes any claim for unemployment or worker's compensation; any right to COBRA benefits or vested retirement benefits; and any existing rights of defense and indemnity or liability insurance coverage. Nothing in this Agreement limits Plaintiffs' rights to file a claim, give information, or participate in an investigation or proceeding with a government agency such as the U.S. Securities and Exchange Commission (SEC), the Equal Employment Opportunity Commission (EEOC), or the Occupational Safety and Health Administration (OSHA) under any law protecting such rights. Plaintiffs give up, however, the right to any money or other personal benefit from any Releasee (not a government agency) for any such claim or litigation, whether brought by Plaintiffs or on their behalf, unless prohibited by law.

6. **Court Approval.** The Parties will seek Court approval of the Agreement. Plaintiffs agree to cooperate in obtaining such approval. If the Court does not approve the settlement or does not dismiss the Lawsuit, in full, with prejudice, the Parties agree to engage in follow-up discussions with the goal of resolving the Court's concerns that precluded approval and/or full dismissal, to the fullest extent consistent with the parties' original, mutual intent at the time they agreed upon a settlement. If feasible, the Parties will then resubmit the settlement for approval within thirty (30) days, or if approval is again denied, they will take whatever measures are necessary to achieve settlement approval, to the fullest extent consistent with the Parties' original, mutual intent at the time they agreed upon a settlement.

7. **Promise Not To Sue.** A "promise not to sue" means Plaintiffs promise not to sue any Releasee in court. This is different from the Release above. Besides releasing claims covered by the above Release, Plaintiffs agree never to sue any Releasee for any reason covered by the Release, subject to the Release Exclusions. Despite this Promise Not To Sue, however, Plaintiffs may file suit to enforce this Agreement. If Plaintiffs sue a Releasee in violation of this Agreement, he shall be required to pay that Releasee's reasonable attorney fees and other litigation costs incurred in defending against her suit.

8. **Confidentiality of Agreement.** This Agreement is strictly confidential. Other than as necessary to obtain Court approval of this Agreement, Plaintiffs will not communicate this Agreement's terms, or any other settlement agreement entered into in connection with the Lawsuit, to any third party, whether verbally or in writing, by any means, including by social media. Any disclosure by Plaintiffs will cause Defendants and the Releasees irreparable harm that money cannot undo. Accordingly, violation of this section will entitle Defendants to temporary and permanent injunctive relief. Except as required by law, Plaintiffs have not disclosed and will not disclose any term of this Agreement or any other settlement agreement entered into in connection with the Lawsuit, including any payment under this Agreement or any other settlement agreement entered into in connection with the Lawsuit, to anyone except their immediate family members and their legal/financial advisors. Each of them is bound by this Confidentiality of Agreement provision, and a disclosure by any of them is a disclosure by Plaintiffs. Except as relates to

DocuSign Envelope ID: 8110B5B7-020A-44B3-A8D5-A1B2CB002C0F
Case 1:22-cv-24089-JEM Document 66-1 Entered on FLSD Docket 01/12/2024 Page 8 of 19

obtaining Court approval of the Agreement, the only comment that Plaintiffs or their legal counsel may make in response to an inquiry by a third party regarding the Lawsuit or this Agreement will be to say that "no dispute is pending." Plaintiffs further represent that, as of the date Plaintiffs executed this Agreement, they and their legal counsel have not disclosed the terms or fact of this settlement or any other settlement agreement entered into in connection with the Lawsuit to any individual, apart from through formal filings with the Court.

9. ***Non-Disparagement.*** Plaintiffs promise not to do or say anything, verbally or in writing, directly or indirectly, that disparages, reflects negatively on, or otherwise detrimentally affects Defendants or any Releasee. This non-disparagement provision explicitly prohibits posting disparaging comments, remarks, videos, or reviews on social media platforms, including but not limited to Glassdoor, Indeed, Facebook, Yelp, search engine reviews, or other social media, career, or messaging platforms.

10. ***Confidentiality and Non-Disparagement Exclusions.*** Nothing in this Agreement, including its confidentiality and non-disparagement provisions and the release and waiver of claims, is intended to limit your alleged rights to engage in protected, concerted activity under Section 7 of the National Labor Relations Act ("NLRA") or to file a charge with, participate in any investigation by or testify in any proceeding before the National Labor Relations Board. This means, for example, that nothing in this Agreement prohibits you from speaking with co-workers or third parties about pay, hours, or terms and conditions of alleged employment (which Defendants deny) or from engaging in other protected, concerted activities under the NLRA. You waive any right to monetary or other relief, including reinstatement, which may be ordered by the NLRB as a result of or in connection with such charge, investigation or proceeding. Nothing in this Paragraph shall be construed as an admission that the NLRA, in fact, applies to you.

11. ***Non-Admission.*** Neither Defendants' offer reflected in this Agreement nor any payment under this Agreement is an admission that Plaintiffs have any viable claim against any Releasee. Each Releasee denies all liability. The Parties agree that, except as otherwise provided herein, they shall bear their own respective attorneys' fees and costs. Neither Plaintiffs nor Defendants shall be viewed as a prevailing party by virtue of executing this Agreement.

12. ***Payment of Applicable Taxes.*** Plaintiffs are and shall be solely responsible for all federal, state, and local taxes that they may owe by virtue of the receipt of any portion of the monetary payment provided under this Agreement. Plaintiffs agree to indemnify and hold Defendants harmless from any and all liability, including, without limitation, all penalties, interest and other costs that may be imposed on him by the Internal Revenue Service or other governmental agencies regarding any tax obligations that may arise from the monetary consideration made to Plaintiffs under this Agreement.

13. ***Applicable Law.*** This Agreement shall be interpreted under federal law if that law governs, and otherwise under the laws of Florida, without regard to its choice of law provisions.

14. ***Enforceability.*** If a court (or arbitrator) finds any part of this Agreement unenforceable, that part shall be modified and the rest enforced. If a court (or arbitrator) finds any such part incapable of being modified, it shall be severed and the rest enforced. A decision not to enforce this Agreement does not waive any future violation.

**15. *Enforcement*.** If any of the Plaintiffs breaches this Agreement, Defendants and each Releasee shall be entitled to preliminary and permanent injunctive relief plus attorneys' fees any of the Defendants and/or each Releasee incur in enforcing this Agreement, unless otherwise expressly provided elsewhere in this Agreement, plus any additional relief determined to be appropriate.

**16. *Counterparts*.** This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, with the same effect as if all parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together, shall constitute one and the same instrument, and shall be considered confidential in accordance with the terms of this Agreement.

**17. *Non-Assignment*.** Plaintiffs agree that they have not and will not assign this Agreement, any part of this Agreement, or any rights arising under this Agreement, to any person or entity. Plaintiffs further represent and warrant that, as of the effective date of this Agreement, the claims released under this Agreement have not been sold, assigned, or transferred, in whole or in part, to any other person or entity.

**18. *No Future Employment*.** Plaintiffs agree they will not seek or accept future employment or work with any Releasee. If Plaintiffs nonetheless seek or obtain such employment or work after this Agreement takes effect, this Agreement shall constitute sufficient cause for refusing to hire or contract with them or for terminating their subsequent employment or work.

**19. *Entire Agreement*.** This Agreement constitutes the entire, complete, and integrated statement of each and every term and provision agreed to by and between Plaintiffs and Defendants related to Plaintiffs' releases of claims. This Agreement supersedes any prior representations, promises, or warranties (oral or otherwise) made by Plaintiffs or Defendants as to such claims, and neither Plaintiffs nor Defendants shall be liable or bound to any prior representation, promise, or warranty (oral or otherwise) as to the matters covered by this Agreement, unless expressly set forth herein. This Agreement shall not be modified or canceled in any respect, except as provided herein by a writing executed by Plaintiffs and Defendants.

**20. *Other Representations*.** Plaintiffs agree:

- They have received all pay, compensation, benefits, leave, and/or time off they are due to date, including for overtime or vacation/PTO;

- They have not suffered any on-the-job injury for which they have not already filed a claim, and the end of his work is not related to any such injury;

- The payments and other consideration provided in this Agreement are not related to sexual harassment or sexual abuse;

- They have had the opportunity to negotiate this Agreement with Defendants, and this Agreement shall not be construed for or against any party as a drafter of its terms;

- They were advised in writing, by getting a copy of this Agreement, to consult with an attorney before signing below; and

- They are signing this Agreement knowingly and voluntarily.

> READ THIS RELEASE CAREFULLY AND CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT: IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS. IF YOU WISH, YOU SHOULD CONSULT AN ATTORNEY OR OTHER ADVISOR AT YOUR OWN EXPENSE.

By: _/s/ Tasma Brighthaupt_ 12/24/2023
TASMA BRIGHTHAUPT     (Date)

By: _/s/ Debbie Giambruno_ 1/4/2024
NOMI HEALTH, INC.     (Date)

Name: Debbie Giambruno

Title: General Counsel

By: _/s/ Consuela Jones_ 1/2/2024
CONSUELA JONES     (Date)

By: _/s/ Odin Martinez_ 12/21/2023
ODIN MARTINEZ     (Date)

By: _____
SBP STAFFING & RECRUTING, LLC (Date)

Name: _____

Title: _____

By: _/s/ Veronica Mejia_ 12/21/2023
VERONICA MEJIA     (Date)

9

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**1. *Parties*.** The parties to this Agreement are Tasma Brighthaupt ("Brighthaupt"), Consuela Jones ("Jones"), Odin Martinez ("Martinez"), and Veronica Mejia ("Mejia"), Nomi Health, Inc. ("Nomi"), and SBP Staffing and Recruiting, LLC ("SBP"). Collectively, Brighthaupt, Jones, Martinez, and Mejia are referred to as "Plaintiffs." Collectively, Nomi and SBP are referred to as "Defendants." Collectively, Plaintiffs and Defendants are referred to as the "Parties."

On December 16, 2022, Plaintiffs filed a lawsuit in the U.S. District Court for the Southern District of Florida, titled *Tasma Brighthaupt et al. v. Nomi Health Inc. and SBP Staffing & Recruiting, LLC*, Case No. 1:22-cv-24089-JEM (the "Lawsuit"), which alleged that Defendants had failed to pay them overtime under the Fair Labor Standards Act of 1938 ("FLSA").

Plaintiffs and Defendants are interested in avoiding all further potential legal costs and disputes, and in fully and expeditiously resolving the claims, charges, or issues of law or fact that were or could have been raised by Plaintiffs against Defendants in the Lawsuit, as of the date Plaintiffs sign this Agreement.

**2. *Consideration for Release of Claims*.** SBP agrees to pay Plaintiffs a total of twenty thousand dollars ($20,000.00) and Nomi agrees to pay Plaintiffs a total of forty thousand dollars ($40,000.00), allocated as follows:

- *To Tasma Brighthaupt*:

  - $896.50 from SBP, as non-employee compensation, in exchange for Brighthaupt's release of any claims for allegedly unpaid wages, including her claims under the FLSA (not including liquidated damages). SBP's receipt of an IRS Form W-9 completed and executed by Brighthaupt is a condition precedent to this payment. SBP will issue, if appropriate, an IRS Form 1099 to Brighthuapt reflecting this payment.

  - $754.68 from SBP and $141.82 from Nomi, as non-employee compensation, in exchange for Bighthaupt's release of any claims for liquidated wages in connection with any claims for allegedly unpaid wages, including under the FLSA. Defendants' receipt of IRS Forms W-9 completed and executed by Brighthaupt is a condition precedent to these payments. Defendants will issue, if appropriate, IRS Forms 1099 to Brighthaupt reflecting this payment.

  - $500.00 from Nomi, as non-employee compensation, in exchange for Brighthaupt's release of any and all claims that Brighthaupt may have against the Releasees (as defined below) arising out of any fact, condition, or circumstance whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise. Nomi's receipt of IRS Form W-9 completed and executed by Brighthaupt is a condition precedent to this

1

- payment. Nomi will issue, if appropriate, an IRS Form 1099 to Brighthaupt reflecting this payment.

- $500.00 from Nomi, as non-employee compensation, in exchange for Brighthaupt's agreement to the confidentiality, nondisparagement, convent not to sue, no-rehire, and other provisions contained in this Agreement for which consideration has not been previously identified. Brighthaupt's receipt of an IRS Form W-9 completed and executed by Brighthaupt is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Brighthaupt reflecting this payment.

- *To Consuela Jones*:

    - $467.50 from SBP, as non-employee compensation, in exchange for Jones's release of any claims for allegedly unpaid wages, including her claims under the FLSA (not including liquidated damages). SBP's receipt of an IRS Form W-9 completed and executed by Jones is a condition precedent to this payment. SBP will issue, if appropriate, an IRS Form 1099 to Jones reflecting this payment.

    - $316.96 from SBP and $150.54 from Nomi, as non-employee compensation, in exchange for Jones's release of any claims for liquidated wages in connection with any claims for allegedly unpaid wages, including under the FLSA. Defendants' receipt of IRS Forms W-9 completed and executed by Jones is a condition precedent to these payments. Defendants will issue, if appropriate, IRS Forms 1099 to Jones reflecting these payments.

    - $500.00 from Nomi, as non-employee compensation, in exchange for Jones's release of any and all claims that Jones may have against the Releasees (as defined below) arising out of any fact, condition, or circumstance whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise. Nomi's receipt of IRS Form W-9 completed and executed by Jones is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Jones reflecting this payment.

    - $500.00 from Nomi, as non-employee compensation, in exchange for Jones's agreement to the confidentiality, nondisparagement, convent not to sue, no-rehire, and other provisions contained in this Agreement for which consideration has not been previously identified. Nomi's receipt of an IRS Form W-9 completed and executed by Jones is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Jones reflecting this payment.

- *To Odin Martinez:*

  - $8,006.26 from SBP, as non-employee compensation, in exchange for Martinez's release of any claims for allegedly unpaid wages, including his claims under the FLSA (not including liquidated damages). SBP's receipt of an IRS Form W-9 completed and executed by Martinez is a condition precedent to this payment. SBP will issue, if appropriate, an IRS Form 1099 to Martinez reflecting this payment.

  - $3,856.41 from SBP and $4,149.86 from Nomi, as non-employee compensation, in exchange for Martinez's release of any claims for liquidated wages in connection with any claims for allegedly unpaid wages, including under the FLSA. Defendants' receipt of IRS Forms W-9 completed and executed by Martinez is a condition precedent to these payments. Defendants will issue, if appropriate, IRS Forms 1099 to Martinez reflecting these payments.

  - $500.00 from Nomi, as non-employee compensation, in exchange for Martinez's release of any and all claims that Martinez may have against the Releasees (as defined below) arising out of any fact, condition, or circumstance whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise. Nomi's receipt of IRS Form W-9 completed and executed by Martinez is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Martinez reflecting this payment.

  - $500.00 from Nomi, as non-employee compensation, in exchange for Martinez's agreement to the confidentiality, nondisparagement, convent not to sue, no-rehire, and other provisions contained in this Agreement for which consideration has not been previously identified. Nomi's receipt of an IRS Form W-9 completed and executed by Martinez is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Martinez reflecting this payment.

- *To Veronica Mejia:*

  - $3,588.46 from SBP, as non-employee compensation, in exchange for Mejia's release of any claims for allegedly unpaid wages, including her claims under the FLSA (not including liquidated damages). SBP's receipt of an IRS Form W-9 completed and executed by Mejia is a condition precedent to this payment. SBP will issue, if appropriate, an IRS Form 1099 to Mejia reflecting this payment.

  - $2,113.23 from SBP and $1,475.24 from Nomi, as non-employee compensation, in exchange for Mejia's release of any claims for liquidated wages in connection with any claims for allegedly unpaid wages, including

3

under the FLSA. Defendants' receipt of IRS Forms W-9 completed and executed by Mejia is a condition precedent to these payments. Defendants will issue, if appropriate, IRS Forms 1099 to Mejia reflecting these payments.

- $500.00 from Nomi, as non-employee compensation, in exchange for Mejia's release of any and all claims that Mejia may have against the Releasees (as defined below) arising out of any fact, condition, or circumstance whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise. Nomi's receipt of IRS Form W-9 completed and executed by Mejia is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Mejia reflecting this payment.

- $500.00 from Nomi, as non-employee compensation, in exchange for Mejia's agreement to the confidentiality, nondisparagement, convent not to sue, no-rehire, and other provisions contained in this Agreement for which consideration has not been previously identified. Nomi's receipt of an IRS Form W-9 completed and executed by Mejia is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Mejia reflecting this payment.

- *To Plaintiffs' Counsel:*

  - $11,584.17 from Nomi for attorneys' fees and costs to Obeidy & Associates, P.A. Defendants' receipt of an IRS Form W-9 completed and executed by Obeidy & Associates, P.A. is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Obeidy & Associates, P.A. reflecting this payment.

  - $18,498.37 from Nomi for attorneys' fees and costs to Scott Law Team, LLC. Nomi's receipt of an IRS Form W-9 completed and executed by Scott Law Team, LLC is a condition precedent to this payment. Nomi will issue, if appropriate, an IRS Form 1099 to Scott Law Team, LLC reflecting this payment.

Defendants will report the payment(s) above to the IRS as required by law. Plaintiffs acknowledge that they have not relied on any statements or representations by Defendants or their attorneys with respect to the tax treatment of the payments described in this section. If any taxing body determines that the tax treatment was incorrect and that greater amounts should have been withheld from any payment above (or any part thereof), Plaintiffs acknowledge and assume all responsibility for paying those amounts and further agree to indemnify and hold Defendants harmless for payment of any additional taxes and any interest and penalties thereon.

All Parties warrant that they are not aware of any attorneys' liens placed on this matter.

4

Plaintiffs agree that the payments above are consideration for the promises by Plaintiffs contained herein and that Defendants were not otherwise obligated to make these payments. The Parties further acknowledge that it is Defendants' position that Plaintiffs were not, at any time relevant to the claims asserted in the Lawsuit, employees of any of the Defendants.

Further, the Parties acknowledge and agree that the payments by SBP and Nomi detailed above are independent of one another. That is, Nomi shall not be responsible for any amount to be paid by SBP, and SBP shall not be responsible for any amount to be paid to Nomi. To the extent any party defaults in its payment obligations, Plaintiffs' sole recourse shall be against the defaulting party. Similarly, Plaintiffs' obligations under the Agreement attach as to each Defendant separately, and are not dependant on the other parties' satisfaction of its obligations. That is, the failure of one of the Defendants to make its payments under the Agreement shall not impact the ability of a Defendant that has made its payments to enforce Plaintiff's promises and obligations under the Agreement.

Defendants' obligations to make the payments above shall become due within 21 days after all of the following occur: (i) Defendants receive this Agreement executed by all Plaintiffs; (ii) the Court approves this Agreement, upon joint motion, and dismisses the Lawsuit with prejudice, in full; and (iii) Plaintiffs and their attorney(s) provide any completed tax forms identified above. Plaintiffs acknowledge that, unless and until all of the foregoing conditions precedent are satisfied as to all Plaintiffs, this Agreement shall not be valid or binding.

3.   ***Dismissal of the Lawsuit.*** The Parties agree that Plaintiffs causing the Lawsuit and claims to be dismissed with prejudice is a condition precedent to Defendants' promises in this Agreement. Plaintiffs agree to take any actions necessary to effectuate the dismissal with prejudice. Plaintiffs understand and acknowledge that if any portion of the claims asserted by any current individual plaintiff in the Lawsuit is not dismissed with prejudice or proceeds in any respect, this Agreement shall have no force or effect and Plaintiffs shall be entitled to no payments hereunder.

4.   ***Release of Claims.*** Plaintiffs release Defendants, their parents, subsidiaries, affiliates, predecessors, successors, partnerships, investors, joint ventures, vendors, subcontractors, related entities, and all of Defendants' and the foregoing entities' past and present directors, officers, employees, and anyone else acting by, through, for, under, or in concert with any of them (collectively, the "Releasees") from any and all claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description, or character whatsoever that party may have against any or all of the Releasees arising out of his work or employment with any Releasee and/or any other fact, condition, circumstance, or occurrence whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected, or concealed, and whether presently asserted or otherwise, including, but not limited to, all claims that any Releasee failed to pay any wages or other compensation or benefits including back pay, front pay, bonuses, commissions, equity, expenses, incentives, insurance, paid/unpaid leave/time off, profit sharing, salary, or separation pay/benefits.

The Parties acknowledge that they may later discover facts different from or in addition to those now known to them or believed by them to be true with respect to any or all of the matters covered by this Agreement, and the Parties agree that this Agreement nevertheless shall remain in full and complete force and effect.

5.   *Release Exclusions.*  The Release of Claims excludes the right to enforce this Agreement as well as any claims that cannot be waived by law. This includes any claim for unemployment or worker's compensation; any right to COBRA benefits or vested retirement benefits; and any existing rights of defense and indemnity or liability insurance coverage. Nothing in this Agreement limits Plaintiffs' rights to file a claim, give information, or participate in an investigation or proceeding with a government agency such as the U.S. Securities and Exchange Commission (SEC), the Equal Employment Opportunity Commission (EEOC), or the Occupational Safety and Health Administration (OSHA) under any law protecting such rights. Plaintiffs give up, however, the right to any money or other personal benefit from any Releasee (not a government agency) for any such claim or litigation, whether brought by Plaintiffs or on their behalf, unless prohibited by law.

6.   *Court Approval.* The Parties will seek Court approval of the Agreement. Plaintiffs agree to cooperate in obtaining such approval. If the Court does not approve the settlement or does not dismiss the Lawsuit, in full, with prejudice, the Parties agree to engage in follow-up discussions with the goal of resolving the Court's concerns that precluded approval and/or full dismissal, to the fullest extent consistent with the parties' original, mutual intent at the time they agreed upon a settlement. If feasible, the Parties will then resubmit the settlement for approval within thirty (30) days, or if approval is again denied, they will take whatever measures are necessary to achieve settlement approval, to the fullest extent consistent with the Parties' original, mutual intent at the time they agreed upon a settlement.

7.   *Promise Not To Sue.* A "promise not to sue" means Plaintiffs promise not to sue any Releasee in court. This is different from the Release above. Besides releasing claims covered by the above Release, Plaintiffs agree never to sue any Releasee for any reason covered by the Release, subject to the Release Exclusions. Despite this Promise Not To Sue, however, Plaintiffs may file suit to enforce this Agreement. If Plaintiffs sue a Releasee in violation of this Agreement, he shall be required to pay that Releasee's reasonable attorney fees and other litigation costs incurred in defending against her suit.

8.   *Confidentiality of Agreement.* This Agreement is strictly confidential. Other than as necessary to obtain Court approval of this Agreement, Plaintiffs will not communicate this Agreement's terms, or any other settlement agreement entered into in connection with the Lawsuit, to any third party, whether verbally or in writing, by any means, including by social media. Any disclosure by Plaintiffs will cause Defendants and the Releasees irreparable harm that money cannot undo. Accordingly, violation of this section will entitle Defendants to temporary and permanent injunctive relief. Except as required by law, Plaintiffs have not disclosed and will not disclose any term of this Agreement or any other settlement agreement entered into in connection with the Lawsuit, including any payment under this Agreement or any other settlement agreement entered into in connection with the Lawsuit, to anyone except their immediate family members and their legal/financial advisors. Each of them is bound by this Confidentiality of Agreement provision, and a disclosure by any of them is a disclosure by Plaintiffs. Except as relates to

obtaining Court approval of the Agreement, the only comment that Plaintiffs or their legal counsel may make in response to an inquiry by a third party regarding the Lawsuit or this Agreement will be to say that "no dispute is pending." Plaintiffs further represent that, as of the date Plaintiffs executed this Agreement, they and their legal counsel have not disclosed the terms or fact of this settlement or any other settlement agreement entered into in connection with the Lawsuit to any individual, apart from through formal filings with the Court.

9. *Non-Disparagement.* Plaintiffs promise not to do or say anything, verbally or in writing, directly or indirectly, that disparages, reflects negatively on, or otherwise detrimentally affects Defendants or any Releasee. This non-disparagement provision explicitly prohibits posting disparaging comments, remarks, videos, or reviews on social media platforms, including but not limited to Glassdoor, Indeed, Facebook, Yelp, search engine reviews, or other social media, career, or messaging platforms.

10. *Confidentiality and Non-Disparagement Exclusions.* Nothing in this Agreement, including its confidentiality and non-disparagement provisions and the release and waiver of claims, is intended to limit your alleged rights to engage in protected, concerted activity under Section 7 of the National Labor Relations Act ("NLRA") or to file a charge with, participate in any investigation by or testify in any proceeding before the National Labor Relations Board. This means, for example, that nothing in this Agreement prohibits you from speaking with co-workers or third parties about pay, hours, or terms and conditions of alleged employment (which Defendants deny) or from engaging in other protected, concerted activities under the NLRA. You waive any right to monetary or other relief, including reinstatement, which may be ordered by the NLRB as a result of or in connection with such charge, investigation or proceeding. Nothing in this Paragraph shall be construed as an admission that the NLRA, in fact, applies to you.

11. *Non-Admission.* Neither Defendants' offer reflected in this Agreement nor any payment under this Agreement is an admission that Plaintiffs have any viable claim against any Releasee. Each Releasee denies all liability. The Parties agree that, except as otherwise provided herein, they shall bear their own respective attorneys' fees and costs. Neither Plaintiffs nor Defendants shall be viewed as a prevailing party by virtue of executing this Agreement.

12. *Payment of Applicable Taxes.* Plaintiffs are and shall be solely responsible for all federal, state, and local taxes that they may owe by virtue of the receipt of any portion of the monetary payment provided under this Agreement. Plaintiffs agree to indemnify and hold Defendants harmless from any and all liability, including, without limitation, all penalties, interest and other costs that may be imposed on him by the Internal Revenue Service or other governmental agencies regarding any tax obligations that may arise from the monetary consideration made to Plaintiffs under this Agreement.

13. *Applicable Law.* This Agreement shall be interpreted under federal law if that law governs, and otherwise under the laws of Florida, without regard to its choice of law provisions.

14. *Enforceability.* If a court (or arbitrator) finds any part of this Agreement unenforceable, that part shall be modified and the rest enforced. If a court (or arbitrator) finds any such part incapable of being modified, it shall be severed and the rest enforced. A decision not to enforce this Agreement does not waive any future violation.

**15. *Enforcement*.** If any of the Plaintiffs breaches this Agreement, Defendants and each Releasee shall be entitled to preliminary and permanent injunctive relief plus attorneys' fees any of the Defendants and/or each Releasee incur in enforcing this Agreement, unless otherwise expressly provided elsewhere in this Agreement, plus any additional relief determined to be appropriate.

**16. *Counterparts*.** This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, with the same effect as if all parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together, shall constitute one and the same instrument, and shall be considered confidential in accordance with the terms of this Agreement.

**17. *Non-Assignment*.** Plaintiffs agree that they have not and will not assign this Agreement, any part of this Agreement, or any rights arising under this Agreement, to any person or entity. Plaintiffs further represent and warrant that, as of the effective date of this Agreement, the claims released under this Agreement have not been sold, assigned, or transferred, in whole or in part, to any other person or entity.

**18. *No Future Employment*.** Plaintiffs agree they will not seek or accept future employment or work with any Releasee. If Plaintiffs nonetheless seek or obtain such employment or work after this Agreement takes effect, this Agreement shall constitute sufficient cause for refusing to hire or contract with them or for terminating their subsequent employment or work.

**19. *Entire Agreement*.** This Agreement constitutes the entire, complete, and integrated statement of each and every term and provision agreed to by and between Plaintiffs and Defendants related to Plaintiffs' releases of claims. This Agreement supersedes any prior representations, promises, or warranties (oral or otherwise) made by Plaintiffs or Defendants as to such claims, and neither Plaintiffs nor Defendants shall be liable or bound to any prior representation, promise, or warranty (oral or otherwise) as to the matters covered by this Agreement, unless expressly set forth herein. This Agreement shall not be modified or canceled in any respect, except as provided herein by a writing executed by Plaintiffs and Defendants.

**20. *Other Representations*.** Plaintiffs agree:

- They have received all pay, compensation, benefits, leave, and/or time off they are due to date, including for overtime or vacation/PTO;

- They have not suffered any on-the-job injury for which they have not already filed a claim, and the end of his work is not related to any such injury;

- The payments and other consideration provided in this Agreement are not related to sexual harassment or sexual abuse;

- They have had the opportunity to negotiate this Agreement with Defendants, and this Agreement shall not be construed for or against any party as a drafter of its terms;

- They were advised in writing, by getting a copy of this Agreement, to consult with an attorney before signing below; and

- They are signing this Agreement knowingly and voluntarily.

> READ THIS RELEASE CAREFULLY AND CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT: IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS. IF YOU WISH, YOU SHOULD CONSULT AN ATTORNEY OR OTHER ADVISOR AT YOUR OWN EXPENSE.

By: _[signature]_ 12/24/2023
TASMA BRIGHTHAUPT (Date)

By: _____
NOMI HEALTH, INC. (Date)

Name: _____

Title: _____

By: _[signature: Consuela Jones]_ 1/2/2024
CONSUELA JONES (Date)

By: _[signature]_ 12/21/2023
ODIN MARTINEZ (Date)

By: _[signature: Trixie Belo-Osagie]_
SBP STAFFING & RECRUTING, LLC (Date)

Name: Trixie Belo-Osagie

Title: CEO/President

By: _[signature]_ 12/21/2023
VERONICA MEJIA (Date)

9